TERRY P. SMITH, Administrator of the Estate of MARY G. SMITH, Deceased; TERRY P. SMITH, INDIVIDUALLY; and MARISSA TIERRA SMITH, Plaintiffs v. BEAUFORT COUNTY HOSPITAL ASSOCIATION, INC., d/b/a BEAUFORT COUNTY HOSPITAL; NINA H. WARD, M.D.; BEAUFORT EMERGENCY MEDICAL ASSOCIATES, P.A.; FAMILY MEDICAL CARE, INC.; GEORGE KLEIN, M.D.; ELISABETH COOK, M.D.; and DANNIE JONAS, PHYSICIAN ASSISTANT, P.A., Defendants

No. COA99-1575

(Filed 29 December 2000)

**1. Appeal and Error— appealability—revocation of pro hac vice admission of counsel—interlocutory order—substantial right**

The trial court's revocation of the pro hac vice admission of plaintiffs' counsel affects a substantial right and is immediately appealable.

**2. Attorneys— revocation of pro hac vice admission—no abuse of discretion**

The trial court did not abuse its discretion in a medical negligence case by concluding that it could summarily revoke previously granted pro hac vice admission of plaintiffs' counsel because the express language of N.C.G.S. § 84-4.2 allows a superior court judge the authority and discretion to summarily revoke an earlier order granting pro hac vice admission under N.C.G.S. § 84-4.1.

**3. Evidence— judicial notice—number of highly skilled plaintiffs' attorneys engaged in the trial of medical negligence actions in our state—number of times a Florida law firm participated in litigation in North Carolina**

The trial court properly took judicial notice under N.C.G.S. § 8C-1, Rule 201(b) and (c) of the number of highly skilled plaintiffs' attorneys engaged in the trial of medical negligence actions in our state and of information provided by the North Carolina Bar Association about the number of times a particular Florida law firm participated in litigation in North Carolina, because: (1) the information about the attorneys in our state is generally known within the jurisdiction of the trial courts of this state; (2) the information provided by the North Carolina Bar Association is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned; (3)

plaintiffs failed to timely request an opportunity to be heard under N.C.G.S. § 8C-1, Rule 201(e); and (4) plaintiffs had the opportunity and failed to object at the hearing to the list of nineteen cases that the Florida law firm was involved with in North Carolina.

**4. Attorneys— revocation of pro hac vice admission—no requirement of change in circumstances, misconduct, or other evidence to warrant revocation**

The trial court did not abuse its discretion by revoking previously granted pro hac vice admission to plaintiffs' counsel even though plaintiffs contend there was no change in circumstances, no misconduct, and no other evidence to warrant the revocation, because: (1) plaintiffs failed to cite North Carolina authority to show that a previously granted pro hac vice admission can only be revoked when there is a change in circumstances, misconduct, or other evidence to warrant the revocation, and no such standard exists in North Carolina; and (2) N.C.G.S. § 84-4.2 grants wide discretionary authority to summarily revoke a prior pro hac vice admission.

**5. Attorneys— revocation of pro hac vice admission—trial court's misapprehension of reciprocity statutes not prejudicial error**

Although the trial court may have misapprehended North Carolina's and Florida's reciprocity statutes and incorrectly concluded that reciprocity does not exist between the two states, plaintiffs have not shown how this conclusion affected the ultimate result and the trial court still properly concluded that it had discretion to make its ruling to revoke a prior pro hac vice admission under N.C.G.S. § 84-4.2.

**6. Attorneys— revocation of pro hac vice admission—misapprehension of letter or spirit of statute not prejudicial error**

Although the trial court erred in a medical negligence case by its conclusion of law that neither the letter nor spirit of N.C.G.S. § 84-4.1(2) for pro hac vice admission had been complied with, the misapprehensions did not alter the prior result by overcoming the discretion allotted to the trial court under N.C.G.S. § 84-4.2 to revoke a prior pro hac vice admission.

**7. Attorneys— revocation of pro hac vice admission—habitual practice of law**

The trial court did not err in a medical negligence case by concluding that the conduct of a Florida law firm constituted the habitual practice of law, because: (1) there is competent evidence in the record to support the trial court's findings and conclusions based on the sixteen to nineteen prior pro hac vice admissions of the Florida firm in North Carolina; (2) an entire law firm can be treated as if it were a single lawyer for purposes of pro hac vice admission; (3) the trial court did not rely on a numeric limitation on pro hac vice appearances of out-of-state counsel as a basis for its decision; and (4) plaintiffs did not object to the evidence provided in an article that the Florida firm solicited business in this state.

Judge WYNN dissenting.

Appeal by plaintiffs from an order entered 13 September 1999 by Judge William C. Griffin, Jr. in Beaufort County Superior Court. Heard in the Court of Appeals 18 October 2000.

*White and Crumpler, by Dudley A. Witt, for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., Mark A. Davis and Charles L. Becker, for defendant-appellees Beaufort County Hospital Association, Inc., d/b/a Beaufort County Hospital; Nina H. Ward, M.D.; Beaufort Emergency Medical Associates, P.A.; and Elisabeth Cook, M.D.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Robert M. Clay and Charles George, for defendant-appellees Family Medical Care, Inc., George Klein, M.D. and Dannie Jonas, P.A.*

HUNTER, Judge.

Terry P. Smith, individually and as administrator of the Estate of Mary G. Smith, and Marissa Tierra Smith (collectively, "plaintiffs") appeal from a court order revoking and abrogating the original order granting *pro hac vice* admission to Bruce M. Wilkinson and Gloretta H. Hall (collectively, "plaintiffs' counsel").

In the assignments of error in their brief, plaintiffs claim the trial court (1) erred in concluding that it could summarily revoke previously granted *pro hac vice* admissions on the grounds that said

conclusion is contrary to existing law and an abuse of discretion, (2) abused its discretion by revoking the *pro hac vice* admission previously granted to plaintiffs' counsel when there was no change in circumstances, no misconduct, and no other evidence to warrant the revocation, (3) erred in entering its conclusion of law where it concluded that reciprocity of admission does not exist between Florida and North Carolina because Florida's *pro hac vice* requirements differ from North Carolina's on the grounds that said conclusion is contrary to existing law, (4) erred in its conclusion of law that neither the letter nor the spirit of N.C. Gen. Stat. § 84-4.1(2) had been complied with as said conclusion of law is based upon improper findings of fact and is contrary to existing law, and (5) erred in concluding that the conduct of the law firm Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando (hereinafter, "the Gary Law Firm") constituted the habitual practice of law as said conclusion was based upon improper findings of fact and is contrary to existing law. After a careful review of the records and briefs, we find plaintiffs' arguments to be without merit, and we hereby affirm the trial court.

In May 1997, after having several headaches, Mary G. Smith, plaintiff Terry P. Smith's wife, made a series of trips to the hospital and her personal doctor's office. Beaufort County Hospital Association, Inc., Nina H. Ward, M.D., Beaufort Emergency Medical Associates, P.A., Family Medical Care, Inc., George Klein, M.D., Elisabeth Cook, M.D., and Dannie Jonas, P.A. (collectively, "defendants"), all health care providers, each had a role in the care of Mrs. Smith, and each allegedly failed to diagnose her ailment. Subsequently, Mrs. Smith died on 14 June 1997. As a result, plaintiffs brought forth a medical negligence suit against defendants.

Prior to instituting the action, plaintiff Terry P. Smith approached attorney Mark V. L. Gray in regards to the suit. Having no experience in trying medical negligence cases, Mr. Gray solicited the assistance of at least two Greensboro, North Carolina attorneys; both of which declined to assist. Mr. Gray then sought the assistance of the Gary Law Firm, which is based in Stuart, Florida. Plaintiffs' counsel are members of that firm, and are not licensed to practice law in North Carolina. In fact, the Gary Law Firm does not have any attorney admitted to practice law in our state. Plaintiffs' counsel agreed to aid plaintiffs in their case, and they subsequently assisted Mr. Gray in complying with some preliminary matters involved in filing the complaint.

SMITH v. BEAUFORT COUNTY HOSP. ASS'N.

[141 N.C. App. 203 (2000)]

On 3 May 1999, Mr. Gray initiated the suit on plaintiffs' behalf, and on the same date, he filed motions to have plaintiffs' counsel admitted *pro hac vice* pursuant to N.C. Gen. Stat. § 84-4.1. The motions were heard *ex parte* before the Honorable Richard B. Allsbrook in Beaufort County Superior Court. On that very day, Judge Allsbrook entered an order allowing the motions for *pro hac vice* admission of plaintiffs' counsel, however defendants were never served with the motions or orders. Shortly thereafter, plaintiffs' counsel filed a notice of appearance with the superior court on 14 June 1999. Then on 16 July and 6 August 1999, defendants filed motions to strike, rescind and reconsider, and vacate Judge Allsbrook's order of 3 May 1999.

A hearing was held before the Honorable William C. Griffin, Jr., in Beaufort County Superior Court on 11 August 1999. At that hearing, defendants, arguing to have plaintiffs' counsel's *pro hac vice* status revoked, contended that the Gary Law Firm habitually practices law in North Carolina, and that plaintiffs violated North Carolina Rule of Civil Procedure 5(a) by failing to serve the *pro hac vice* motions on defendants and by seeking an *ex parte* order.

To support their claims, defendants proffered a list that suggested various members of the Gary Law Firm had been admitted *pro hac vice* in the courts of North Carolina approximately nineteen times, an article that reported that a member of the Gary Law Firm distributed promotional materials to undertakers in our state, and a Lee County court order involving attorneys from the Gary Law Firm. Plaintiffs did not object or take exception to any of the submitted evidence. On 13 September 1999, Judge Griffin entered an order revoking and abrogating Judge Allsbrook's earlier order. Thereafter, plaintiffs filed their notice of appeal.

[1] In a preliminary matter to this appeal, plaintiffs contend that the trial court's revocation of plaintiffs' counsel's *pro hac vice* admission affects a substantial right and is immediately appealable. On this contention, we agree.

In the past, we have held that "once [an] attorney was admitted under [§ 84-4.1], [a] plaintiff acquired a substantial right to the continuation of representation by that attorney . . . ." *Goldston v. American Motors Corp.*, 326 N.C. 723, 727, 392 S.E.2d 735, 737 (1990). Furthermore, an order removing said counsel affects a substantial right of the plaintiff and is immediately appealable. *Id.*

We acknowledge defendants' argument in their briefs that plaintiffs' counsel had never been properly admitted *pro hac vice* under § 84-4.1. However defendants' claims that plaintiffs violated N.C.R. Civ. P. 5(a) by failing to serve the motions on defendants and by seeking an *ex parte* order are not properly before this Court. Defendants did not set forth their arguments as assignments or cross-assignments of error in the record on appeal, nor have they made a motion with this Court in that same vein.

"[T]he scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal." *Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991); N.C.R. App. P. 10(a). These issues raised in defendants' briefs were not preserved for appeal, and therefore, we dismiss them. Accordingly, we find that plaintiffs' counsel was properly admitted *pro hac vice* for purposes of this appeal, and consequently, Judge Griffin's order removing counsel affected a substantial right of plaintiffs and is immediately appealable.

N.C. Gen. Stat. § 84-4.1 (1999), the statute that governs the limited practice of out-of-state attorneys in North Carolina, states in pertinent part:

Any attorney domiciled in another state, and regularly admitted to practice in the courts of record of that state and in good standing therein, having been retained as attorney for a party to any civil or criminal legal proceeding pending in the General Court of Justice of North Carolina . . . may, on motion, be admitted to practice in that forum for the sole purpose of appearing for a client in the litigation. The motion required under this section shall contain or be accompanied by:

. . .

(2) A statement, signed by the client . . . declaring that the client has retained the attorney to represent the client in the proceeding.

. . .

(4) A statement that the state in which the attorney is regularly admitted to practice grants like privileges to members of the Bar of North Carolina in good standing.

. . .

Compliance with the foregoing requirements does not deprive the court of the discretionary power to allow or reject the application.

The purpose of § 84-4.1 "is to afford [North Carolina] courts a means to control out-of-state counsel and to assure compliance with the duties and responsibilities of attorneys practicing in this State." *N.C.N.B. v. Virginia Carolina Builders*, 57 N.C. App. 628, 631, 292 S.E.2d 135, 137 (1982), *rev'd on other grounds*, 307 N.C. 563, 299 S.E.2d 629 (1983). " '. . . The statute forbids the courts from allowing non-resident counsel . . . from practicing habitually in our courts, and they cannot acquire the right to do so.' " *State v. Hunter*, 290 N.C. 556, 568, 227 S.E.2d 535, 543 (1976) (quoting *Manning v. R.R.*, 122 N.C. 824, 828, 28 S.E. 963, 964 (1898)).

"Admission of counsel in North Carolina pro hac vice is not a right but a discretionary privilege." *Leonard v. Johns-Manville Sales Corp.*, 57 N.C. App. 553, 555, 291 S.E.2d 828, 829 (1982). " 'It is permissive and subject to the sound discretion of the Court.' " *Id.* (quoting *Hunter*, 290 N.C. at 568, 227 S.E.2d at 542).

**[2]** Having determined the nature and purpose of § 84-4.1, we proceed with our analysis of plaintiffs' specific assignments of error. We first address plaintiffs' assignment claiming that the trial court wrongfully revoked the *pro hac vice* admission of plaintiffs' counsel by improperly concluding that it could summarily revoke Judge Allsbrook's earlier order allowing the admission. Plaintiffs argue that this conclusion is contrary to existing law, as well as an abuse of discretion. We disagree with plaintiffs' contentions, and thus overrule this assignment of error.

Two primary arguments are incorporated in this assignment of error: (1) that the trial court's conclusion that it could summarily revoke plaintiffs' counsel's *pro hac vice* admission was contrary to existing law, and (2) that this conclusion was an abuse of discretion. Again, we disagree.

First, we recognize that, "ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). However, under the circumstances of § 84-4.1, as we have here, our Legislature has spoken directly on point.

Specifically, N.C. Gen. Stat. § 84-4.2 (1999) states, "[p]ermission granted under G.S. 84-4.1 may be summarily revoked by the General Court of Justice . . . on its own motion and in its discretion." "The General Court of Justice constitutes a unified judicial system for purposes of jurisdiction, operation and administration, and consists of an appellate division, a superior court division, and a district court division." N.C. Gen. Stat. § 7A-4 (1999).

In enacting § 84-4.2, our Legislature envisioned and addressed the revocability of previously granted *pro hac vice* admissions. In fact, the express language of N.C. Gen. Stat. § 84-4.2 allows a superior court judge the authority and discretion to summarily revoke an earlier order granting *pro hac vice* admission pursuant to § 84-4.1. Judges Allsbrook and Griffin are both judges of the General Court of Justice (superior court division), and therefore, through the authority granted by § 84-4.2, Judge Griffin had the discretion conferred by our Legislature to summarily revoke Judge Allsbrook's earlier *pro hac vice* admission of plaintiffs' counsel.

Plaintiffs' assignment of error also encompasses the argument that Judge Griffin's order summarily revoking the *pro hac vice* admission of plaintiffs' counsel was an abuse of discretion.

It is well settled that "[a]ppellate review of matters left to the discretion of the trial court is limited to a determination of whether there was a clear abuse of discretion." *Riviere v. Riviere*, 134 N.C. App. 302, 306, 517 S.E.2d 673, 676 (1999); *see also White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Furthermore, "[a] trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White*, 312 N.C. at 777, 324 S.E.2d at 833. "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.*

Here, plaintiffs attack Judge Griffin's conclusion of law that he was "empowered by G.S. 84-4.2 in [his] discretion to summarily revoke *pro hac vice* admissions previously granted." Judge Griffin's conclusion of law is clearly the result of a reasoned decision, based expressly on the specific language of § 84-4.2, which gives Judge Griffin both the authority and the discretion to make such a determination. Therefore, we find that the language of N.C. Gen. Stat. § 84-4.2 manifestly supports Judge Griffin's conclusion of law, and we

SMITH v. BEAUFORT COUNTY HOSP. ASS'N.

[141 N.C. App. 203 (2000)]

hold that Judge Griffin committed no abuse of discretion. Thus, we reject plaintiffs' assignment of error.

**[3]** Plaintiffs further raise two sub-points here. Specifically, plaintiffs argue Judge Griffin erred in taking judicial notice of facts without providing plaintiffs an opportunity to be heard; for example, plaintiffs claim that Judge Griffin (1) took notice of the fact that there are a large number of highly skilled plaintiff's attorneys engaged in the trial of medical negligence actions in North Carolina, and (2) Judge Griffin relied on facts that he obtained from the North Carolina State Bar Association and plaintiffs had no opportunity to confirm or refute the information.

As to both sub-points, N.C.R. Evid. 201(b) states that a fact judicially noticeable by a trial court, "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b) (1999). Moreover, "[a] court may take judicial notice, whether requested or not." N.C. Gen. Stat. § 8C-1, Rule 201(c). However, "a party is entitled upon timely request to an opportunity to be heard . . . ." N.C. Gen. Stat. § 8C-1, Rule 201(e).

Based on N.C.R. Evid. 201(b) and (c), Judge Griffin, on his own accord, properly took judicial notice of (1) the number of highly skilled plaintiffs' attorneys engaged in the trial of medical negligence actions in our state as that information is generally known within the jurisdiction of the trial courts of this state, and (2) the number of times the Gary Law Firm participated in litigation in North Carolina by relying on information supplied by the North Carolina State Bar Association as that information is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Furthermore, plaintiffs failed to timely request an opportunity to be heard as per Rule 201(e). Also, we add that plaintiffs had the opportunity to object at the hearing to the list of nineteen cases that the Gary Law Firm was involved with in North Carolina, yet they failed to do so. Therefore, no reasonable dispute exists as to Judge Griffin's judicially noticed facts, and Judge Griffin did not abuse his discretion in allowing them.

**[4]** Analogous to plaintiffs' above arguments is plaintiffs' next assignment of error that claims the trial court abused its discretion

by revoking plaintiffs' counsel's previously granted *pro hac vice* admission when there was no change in circumstances, no misconduct, and no other evidence to warrant the revocation. We reject this assignment of error.

Plaintiffs cite no North Carolina authority for their supposition that a previously granted *pro hac vice* admission can only be revoked when there is a change in circumstances, misconduct, or other evidence to warrant the revocation. In fact, no such standard is recognized in North Carolina. As discussed *supra*, N.C. Gen. Stat. § 84-4.2 clearly empowers a superior court judge with the authority to summarily revoke a previously granted *pro hac vice* admission in its own discretion. Additionally, § 84-4.2 does not espouse the standard raised by plaintiffs, nor does it raise any standard whatsoever. Hence, as we found no abuse of discretion in plaintiffs' earlier assignment of error, we, too, find no abuse of discretion here, and thus overrule this assignment of error as well.

We note that based on N.C. Gen. Stat. § 84-4.2 and its grant of wide discretionary authority to summarily revoke a prior *pro hac vice* admission, we could end the analysis of plaintiffs' appeal here. However, in the interests of justice and fairness to plaintiffs, we feel compelled to address plaintiffs' remaining assignments of error.

[5] Thus, we consider plaintiffs' third assignment of error that the trial court erred in its conclusion of law that reciprocity of admission does not exist between Florida and North Carolina because Florida's *pro hac vice* requirements differ from North Carolina's. Plaintiffs argue that said conclusion is contrary to existing law. Again, we reject plaintiffs' assignment of error.

Judge Griffin may have misapprehended North Carolina's and Florida's reciprocity statutes and incorrectly concluded that reciprocity does not exist between the two states. However, if a court's ruling was based upon a misapprehension of law, "[i]f the misapprehension of the law does not affect the result . . . the judgment will not be reversed." *Bowles Distributing Co. v. Pabst Brewing Co.*, 69 N.C. App. 341, 348, 317 S.E.2d 684, 689 (1984).

Plaintiffs have not shown how this conclusion affected the ultimate result as, regardless of the error, Judge Griffin still properly concluded that he had the discretion to make his ruling pursuant to N.C. Gen. Stat. § 84-4.2. Thus, the misapprehension of Florida's and

North Carolina's reciprocity statutes does not affect the result below. Accordingly, we deny plaintiffs' third assignment of error.

Lastly, plaintiffs' final two assignments of error take issue with particular findings of fact and conclusions of law found in Judge Griffin's order. We note that N.C. Gen. Stat. §§ 84-4.1 and 84-4.2 do not require the trial court to make any findings of fact or conclusions of law, and the record reflects that neither party here requested them. Therefore, Judge Griffin's order incorporating them was on the side of prudence and caution.

We have long held that "appellate review of findings of fact and conclusions of law made by a trial judge . . . is limited to a determination of whether there is competent evidence to support his findings of fact and whether, in light of such findings, [the judge's] conclusions of law were proper." *Starco, Inc. v. AMG Bonding and Ins. Services*, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996). "[I]f the evidence tends to support the trial court's findings, these findings are binding on appeal, even though there may be some evidence to support findings to the contrary." *Id.* Moreover, "to obtain relief on appeal, an appellant must not only show error, but that appellant must also show that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." *Id.*

In their final assignments of error, plaintiffs claim that the trial court erred (1) in its conclusion of law that neither the letter nor spirit of N.C. Gen. Stat. § 84-4.1(2) had been complied with, and (2) in concluding that the conduct of the Gary Law Firm constituted the habitual practice of law. Plaintiffs argue that both conclusions were based upon improper findings of fact and are contrary to existing law. We reject both assignments of error.

[6] In assignment of error four, plaintiffs take issue with Judge Griffin's findings that (1) the Gary Law Firm was not chosen by plaintiffs, and (2) the provisions of N.C. Gen. Stat. § 84-4.1(2) were not complied with.

First, as to Judge Griffin's finding that the Gary Law Firm was not chosen by plaintiffs, while there is some contrary evidence to the court's finding, competent evidence—i.e. the court's finding that Mr. Gray recruited the Gary Law Firm—exists in the record to support the trial court's initial finding. However, this finding has no bearing in the overall analysis of § 84-4.1(2).

More important is the court's finding that the provisions of § 84-4.1(2) were not complied with by plaintiffs as that finding is both a finding of fact and conclusion of law of Judge Griffin, as well as the basis of this assignment of error. N.C. Gen. Stat. § 84-4.1(2) requires, "[a] statement, signed by the client . . . declaring that the client has retained the attorney to represent the client in the proceeding." In his findings, Judge Griffin found that "[a]lthough plaintiff . . . signed the motions to admit, the provisions of G.S. 84-4.1(2) were not directly complied with."

In determining whether the requirements of § 84-4.1(2) were complied with by plaintiffs, Judge Griffin applied the statute to the facts of the case. In doing so, Judge Griffin's finding that plaintiffs did not directly comply with the requirements of § 84-4.1(2) was essentially a conclusion of law. We note that, "[i]f [a] finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable on appeal." *Bowles*, 69 N.C. App. 341, 344, 317 S.E.2d 684, 686. While Judge Griffin may have misapprehended the requirements of § 84-4.1(2), his misapprehensions again did not alter the prior result by overcoming the discretion allotted him under N.C. Gen. Stat. 84-4.2. Thus, Judge Griffin's conclusion of law that "[n]either the letter nor the spirit of G.S. 84-4.1(2) was complied with in this action," while in error, was not material and prejudicial, nor did it change the outcome.

[7] In their final assignment of error, plaintiffs assert that Judge Griffin held several incorrect notions, among them (1) that a law firm can be admitted to practice *pro hac vice* in this state, (2) that N.C. Gen. Stat. § 84-4.1 contains a numeric limitation on *pro hac vice* appearances by out-of-state counsel, and (3) that the Gary Law Firm has solicited business in this state. Plaintiffs' contentions are not supported by the record.

First, Judge Griffin's conclusion of law was that, "[t]he conduct of the Gary Law Firm *and its members* in North Carolina constitutes the habitual practice of law" (emphasis added). Judge Griffin does not find or conclude, as plaintiffs allege, that a law firm can be admitted *pro hac vice* or habitually practice law in this state. In his order, Judge Griffin found that "*various members of the Gary Law Firm* have repeatedly been admitted *pro hac vice*, at the least sixteen (16) times" and "[t]he Gary Law Firm *(and its members)* has habitually practiced law in North Carolina," (emphasis added). Judge Griffin made no findings of fact or conclusions of law as to the Gary Law Firm's individual practice of law, instead he continually referred to

SMITH v. BEAUFORT COUNTY HOSP. ASS'N.

[141 N.C. App. 203 (2000)]

the behavior at issue as involving the Gary Law Firm *and its members*. Thus, there is competent evidence in the record supporting Judge Griffin's findings and conclusion that the conduct of the Gary Law Firm *and its members* constituted the habitual practice of law in our state, therefore plaintiffs' claims are refuted.

As a side-note, we address the issue of the actions of a law firm being imputed to its member attorneys for purposes of *pro hac vice* admission in this state. We recognize that this issue is a matter of first impression in North Carolina, and rightfully we approach it with caution. After much consideration, we hold that for purposes of *pro hac vice* admission only, an entire law firm can be treated as if it were a single lawyer, and thus the actions of the firm imputed to its members (similar to the North Carolina ethical rule on imputed disqualification, Rule 1.10 of the Rules of Professional Conduct). Otherwise, a law firm could continually circumvent North Carolina's prohibition against the unauthorized practice of law by sending different attorneys into our state for different cases. Therefore, Judge Griffin could properly have based his decision on the imputation of the Gary Law Firm's sixteen to nineteen prior *pro hac vice* admissions in North Carolina to plaintiffs' counsel.

As to plaintiffs' contention that Judge Griffin concluded that N.C. Gen. Stat. § 84-4.1 contains a numeric limitation, Judge Griffin does not set such a limitation. In his discretion, Judge Griffin considered that members of the Gary Law Firm had been admitted *pro hac vice* at least sixteen times in our state, but he did not rely on this number as the basis for his decision. In fact, nowhere in his order does Judge Griffin raise a numeric limitation on *pro hac vice* appearances of out-of-state counsel. Plaintiffs' argument therefore is baseless, and Judge Griffin's discretionary decision is supported by the record.

Finally, Judge Griffin's finding that the Gary Law Firm solicited business in this state is based on the article submitted by defendants at the 11 August 1999 hearing. Plaintiffs had the chance and did not object to the article at the hearing. Thus, the record supports this finding of the trial court as well.

In summary as to these final assignments of error, Judge Griffin's findings of fact are supported by competent evidence in the record, even though some contrary evidence may also exist. Furthermore, although Judge Griffin may have misapprehended the law in part, his errors were not prejudicial, and his other conclusions were valid and

SMITH v. BEAUFORT COUNTY HOSP. ASS'N.

[141 N.C. App. 203 (2000)]

supported his decision. Therefore, the trial court did not abuse its discretion.

Moreover, plaintiffs have failed to show how the alleged errors made by the trial court can overcome the discretion allowed Judge Griffin pursuant to N.C. Gen. Stat. § 84-4.2. Hence, even if plaintiffs' arguments are accepted, plaintiffs have failed to make a showing that the errors were material and prejudicial, having affected the outcome. Plaintiffs' final two assignments of error are hereby rejected.

We conclude by stating that "parties do not have a right to be represented in the courts of North Carolina by counsel who are not duly licensed to practice in this state." *Leonard*, 57 N.C. App. 553, 555, 291 S.E.2d 828, 829. Unlike *Goldston* discussed *supra*, which involved litigation that had been ongoing for several years and an attorney who had a national reputation in handling products liability cases against a particular defendant, this litigation is still in its infancy, and plaintiffs' counsel does not hold any unique expertise that cannot be found elsewhere in our state bar. *Goldston*, 326 N.C. 723, 392 S.E.2d 735. Further, plaintiffs would not be prejudiced by seeking local counsel, as we are confident that the North Carolina State Bar has many competent attorneys, proficient in medical negligence cases, that would be able to continue plaintiffs' cause without any harm to plaintiffs.

In summary, plaintiffs' appeal affects a substantial right and is properly before this Court. Judge Griffin had the authority and discretion pursuant to N.C. Gen. Stat. § 84-4.2 to summarily revoke plaintiff's counsel's prior *pro hac vice* admission. While some of Judge Griffin's findings of fact and conclusions of law may have been in error, the errors were not shown to have affected the result. Regardless of the errors, N.C. Gen. Stat. § 84-4.2 allows the trial court wide discretionary authority. Therefore, we find no abuse of discretion here, and we affirm the decision of the trial court.

Affirmed.

Judge LEWIS concurs.

Judge WYNN dissents in a separate opinion.

Judge WYNN dissenting.

The gravamen of the plaintiffs' assignments of error is that the trial court improperly revoked Judge Allsbrook's order granting

*pro hac vice* admission to Bruce Wilkinson and Gloretta Hall of the Gary Law Firm. The majority correctly notes that "[a]dmission of counsel in North Carolina *pro hac vice* is not a right but a discretionary privilege." *Leonard v. Johns-Manville Sales Corp.*, 57 N.C. App. 553, 555, 291 S.E.2d 828, 829 (1982). However, I believe it is critical to distinguish between the decision to grant admission, and a subsequent decision to revoke that privilege. I also believe it is important to stress the importance of the denial of the substantial rights of the represented party that results therefrom, in addition to the denial of the rights of its counsel.

As our Supreme Court has stated: "[O]nce [an] attorney [is] admitted under [N.C. Gen. Stat. § 84-4.1], plaintiff acquire[s] a substantial right to the continuation of representation by that attorney— just as with any other attorney duly admitted to practice law in the State of North Carolina." *Goldston v. American Motors Corp.*, 326 N.C. 723, 727, 392 S.E.2d 735, 737 (1990). In *Goldston*, a product liability case involving an AMC Jeep vehicle, the Court noted that "[d]epriving plaintiff of her counsel of choice, who is an alleged expert in cases of this nature, certainly exposed her to potential injury . . . ." *Id.*

In *Travco Hotels, Inc. v. Piedmont Natural Gas Co., Inc.*, 332 N.C. 288, 420 S.E.2d 426 (1992), our Supreme Court discussed the appealable nature of an order granting a motion to disqualify counsel, stating that such orders,

> ha[ve] immediate and irreparable consequences for both the disqualified attorney and the individual who hired the attorney. The attorney is irreparably deprived of exercising his right to represent a client. The client, likewise, is irreparably deprived of exercising the right to be represented by counsel of the client's choice.

332 N.C. at 293, 420 S.E.2d at 429.

Therefore, upon the entry of Judge Allsbrook's order granting *pro hac vice* admission to Bruce Wilkinson and Gloretta Hall, the plaintiffs acquired "a substantial right to the continuation of representation by" them. *Goldston*, 326 N.C. at 727, 392 S.E.2d at 737. *Goldston* implies that a plaintiff has an equal right to continued representation whether counsel is admitted to practice in this State or is granted admission *pro hac vice* pursuant to N.C. Gen. Stat. § 84-4.1. *See id.*

In *Travco*, our Supreme Court held that "[d]ecisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal." *Travco*, 332 N.C. at 295, 420 S.E.2d at 430 (citing *In re Lee*, 85 N.C. App. 302, 310, 354 S.E.2d 759, 764-65, *disc. review denied*, 320 N.C. 513, 358 S.E.2d 520 (1987)). The plaintiffs, therefore, contend that Judge Griffin's order revoking the *pro hac vice* admission of plaintiffs' counsel constituted an abuse of discretion. The majority rejects this contention; I, however, believe the contention has merit.

The majority recognizes that "ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). While N.C. Gen. Stat. § 84-4.2 grants permission to "the General Court of Justice" to summarily revoke, "on its own motion and in its discretion," admission previously granted pursuant to N.C. Gen. Stat. § 84-4.1, I believe that the exercise of such discretion must be based upon *some* change in circumstance subsequent to the initial grant of *pro hac vice* admission sufficient to warrant the denial of plaintiffs' substantial right to the continued representation by their counsel of choice. Otherwise, there appears to be nothing to prevent the plaintiffs from again seeking to have Bruce Wilkinson and Gloretta Hall admitted *pro hac vice* by motion before yet another judge. In other words, there must be some basis for changing the determination to grant or deny *pro hac vice* admission; otherwise, I see no basis for one court modifying or overruling another equivalent court.

I disagree further with the majority's holding that, for purposes of *pro hac vice* admission under N.C. Gen. Stat. § 84-4.1 and the prohibition of "habitual practice" in our courts by nonresident counsel, a law firm may be treated as though it were a single lawyer, and therefore the actions of the firm may be imputed to the individual firm members. I believe this conclusion to be inequitable and unsupported by law.

In *State v. Hunter*, 290 N.C. 556, 227 S.E.2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L. Ed. 2d 539 (1977), our Supreme Court quoted with approval language from *Manning v. Railroad*, 122 N.C. 824, 828, 28 S.E. 963, 964 (1898), stating that North Carolina law "forbids the courts from allowing non-resident counsel . . . from practicing habitually in our courts." Furthermore, N.C. Gen. Stat. § 84-4.1

speaks of the admission *pro hac vice* of attorneys, not law firms. Neither this language in *Hunter* nor the statutory language indicates an intent to summarily deprive all members of an out-of-state law firm—whether present or future—the opportunity to appear in our state courts on a *pro hac vice* basis, where a single member of the firm may have appeared in our courts on multiple occasions such that a determination is made that the *individual* has habitually practiced law in this state. I believe the quoted language speaks to the individual "non-resident counsel," and should not impugn to the firm the disqualification of the individual.

Judge Griffin's order was based at least in part on his finding that "[t]he Gary Law Firm (and its members) has habitually practiced law in North Carolina," and Judge Griffin concluded that "[t]he conduct of the Gary Law Firm and its members in North Carolina constitutes the habitual practice of law." I disagree with the implication that a law firm, as opposed to an individual member of a law firm, may be admitted *pro hac vice* to practice before our courts, or that a law firm can be found to have habitually practiced law in North Carolina. To the extent Judge Griffin's order was based upon this conclusion of law, I believe the order constitutes an abuse of discretion.

Furthermore, the majority concedes that Judge Griffin's order was based in part on the erroneous conclusion that "[n]either the letter nor the spirit of G.S. 84-4.1(2) was complied with in this action," and that Judge Griffin misapprehended Florida's and North Carolina's reciprocity statutes in concluding that "reciprocity of admission does not exist" between Florida and North Carolina. The sole remaining conclusion of law upon which Judge Griffin's order can stand is that "[t]he Court is empowered by G.S. 84-4.2 in its discretion to summarily revoke *pro hac vice* admissions previously granted." As noted above, I believe such discretion is not unfettered, but instead is limited to instances of changed circumstances. For the foregoing reasons, I respectfully dissent.